UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON ORTEGA-RAMOS,<br>                    Petitioner<br>v.<br>GREGORY ARCHAMBEAULT,<br>                    Respondent. | Case No.: 18cv2901-LAB (NLS)<br><br>**ORDER OF DISMISSAL** |

Petitioner Leon Ortega-Ramos filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. The Court ordered him to show cause why his petition should not be summarily dismissed because he is not in custody. He has now filed a response, and amended his petition.

A writ of habeas corpus is available only to a petitioner who is "in custody." *Maleng v. Cook*, 490 U.S. 488, 490 (1989). Because this requirement is jurisdictional, *Williamson v. Gregoire*, 151 F.3d 1180, 1182 (9th Cir. 1998), the Court must raise it sua sponte. *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 278 (1977). The party invoking the Court's jurisdiction has the burden of establishing it; until then, jurisdiction is presumed to be lacking. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

In both his original and amended petitions, Ortega-Ramos alleges that he is a Mexican national who was admitted to the status of lawful permanent resident in 1988. He alleges he is disabled and has been suffering from depression. He voluntarily traveled to Mexico so his family could care for him, and stayed there longer than six months.[1] Upon attempting to return to the U.S., his permanent residence card was confiscated on the grounds that he had relinquished his domicile here. He contends that his impermissibly long absence from the U.S. should be excused because his disability made it impossible for him to return within six months. He argues that Respondent's actions violate the Americans with Disabilities Act.

Ortega-Ramos does not directly say whether his lawful permanent resident status was also rescinded, but his other allegations and his prayer for relief imply that it was. He alleges that because he no longer has a permanent residence card, his disability income and social security supplemental income, which he depends on, were cancelled. He asks that the Court order Respondent to allow him to re-enter the U.S., and either return or reissue him a valid lawful permanent resident card.

Ortega-Ramos alleges that he is being denied re-entry. (Am. Pet. (Docket no. 3), ¶ 11.) And although his Response (Docket no. 4) vehemently argues he is cannot re-enter the country, its factual statements make clear he has <u>not</u> been excluded, and he is <u>not</u> barred from crossing the border and entering the United States. For example, he could obtain a visa and enter the country that way. (Response (Docket no. 4), at 3:24–26.) What he means is that he can no longer use his permanent resident card to enter the country, and has to gain permission some other way. In other words, although traveling into the U.S. is more

---

[1] He does not say how much longer he stayed. Nor has he explained why, if he has made his home here, he was forced to go to Mexico to find support.

2

18cv2901-LAB (NLS)

burdensome for him, he is not being kept out. He alleges, however, that other burdens render him "in custody" for purposes of habeas relief: loss of income, loss of benefits, and inability to permanently live and work in the United States. He also argues that no other type of relief is available.

Ortega-Ramos' Response upbraids the Court for its alleged misunderstanding of the precedents it cited, and of the benefits of lawful permanent resident status. But here he is on thin ice. His gruff rebukes do not belong in a brief filed in this or any court. That is particularly true because they are meritless. The Response badly misreads and mischaracterizes binding precedent, cites inapposite authority, and also distorts and misstates the Court's discussion of the law in its earlier order.

For example, Ortega-Ramos cites *Mendez-Alacarez v. Gonzales*, 464 F.3d 842, 844 (9th Cir. 2006) as holding that "habeas jurisdiction remains available even after execution of a removal order." (Response at 2:16–18.) But *Mendez-Alacarez* was not a habeas case, and did not address the "in custody" requirement; rather, it dealt with the Court of Appeals' review of a BIA order denying reconsideration of a removal order.

Ortega-Ramos also cites *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006) as holding that a district court has jurisdiction to grant habeas relief as long as a non-citizen petitioner has not been removed. (Response at 4:20–23.) Reading *Nadarajah* as he suggests is illogical; it implies that the freer a petitioner is, the more likely he is to be "in custody" for habeas purposes. *Nadarajah*, however, dealt with a petitioner who was being detained and denied release on bond, and was therefore obviously in custody. *See id.* at 1071 (noting that Nadarajah "has now been imprisoned for almost five years"); 1075, 1082 (noting that Nadarajah was being denied parole on bond).

The Response cites other cases, discussed below, that similarly do not show that Ortega-Ramos is "in custody" for habeas purposes.

Ortega-Ramos bases his argument, in part on the bare and unsupported contention that no other remedy is available to him.[2] It is absolutely clear, however, that habeas is not a gap-filling or catch-all provision intended as a way of seeking relief in miscellaneous situations not otherwise provided for in law. Habeas is an "extraordinary remedy," limited to cases of "special urgency." *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 351 (1973). "The custody requirement . . . is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." *Id.* More conventional remedies, if available, are appropriate in "cases in which the restraints on liberty are neither severe nor immediate." *Id.* But the unavailability of conventional relief does not mean habeas relief becomes available.

It is also clear that "in custody" includes some kind of physical restraint not shared by the public generally. *Jones v. Cunningham*, 371 U.S. 236, 240 (1963). It is a petitioner's physical liberty—his freedom of movement without restraint—that is pivotal for purposes of the "in custody" requirement. *Williamson v. Gregoire*,

---

[2] The Response merely asserts this, without citing authority and without explaining why. The bare facts he has alleged suggest he may have a remedy under the Administrative Procedures Act (APA), or possibly some other statute such as the Immigration and Nationality Act. In a similar case, border patrol agents detained a lawful permanent resident, confiscated his card, paroled him into the U.S., and refused to return the card. *Huiwu Lai v. United States*, 2018 WL 1610189, slip op. at *1 (W.D. Wash., Apr. 3, 2018). He asked the court, among other things, to declare him a lawful permanent resident and order the defendant to return his card. The plaintiff there sought a remedy under the APA—specifically, 5 U.S.C. §§ 702, 704. *Id.* He was ultimately successful, and the court ordered the government to return his card and (pending further proceedings) to reinstate him as a lawful permanent resident. *Huiwu Lai v. United States*, 2018 WL 3455498, slip op. at *4 (W.D. Wash., July 17, 2018). In another case, *Sharkey v. Quarantillo*, 541 F.3d 75, 89 (2d Cir. 2008), an immigration officer crossed out the I-551 stamp on a lawful permanent resident's passport and wrote "cancelled with prejudice" over the seal. This, the court held, amounted to revocation of lawful permanent resident status, and was a final agency decision reviewable under the APA. *Id.* at 89–91.

151 F.3d 118, 1183 (9th Cir. 1988). *See also Hensley*, 411 U.S. at 351 (basing a finding of custody on the fact that the petitioner could not "come and go as he pleases"). Merely burdening a petitioner's movement—including by making travel more costly or difficult, or requiring him to comply with administrative requirements before relocating—is not custody. *Williamson* at 1184. For example, loss of a driver's license as a practical matter imposes a significant limitation on one's freedom of movement, yet it fails to satisfy the "in custody" requirement. *Id.*

Other penalties and burdens, even if severe, do not amount to custody. *See id.* (discussing cases). For example, loss of substantial benefits, financial loss, and loss of one's permanent home are not custody. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 52–53 (1978) (Native American children who stood to lose the right to remain on the reservation where they lived or inherit their mother's home could not challenge exclusion from membership using habeas); *Jeffredo v. Macarro*, 599 F.3d 913, 919 (9th Cir. 2009) (loss of health benefits and money distributions, and inability to participate in one's community did not amount to custody).

Custody is not limited to actual present physical detention. *Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004). It can include other personal restrictions, and a petitioner may be "in custody" for this purpose even after being released. For instance, petitioners conditionally released from custody but subject to recall (*e.g.*, probation, parole, bail, or release on one's own recognizance) can be "in custody." *Hensley*, 411 U.S. at 349. A petitioner who is required to present himself at a certain times and places may be "in custody." *Hensley*, 411 U.S. at 351. *See, e.g., Jones*, 371 U.S. at 240 (noting that habeas can properly be used to challenge military induction); *Dow v. Circuit Court*, 995 F.2d 922, 923 (9th Cir. 1993) (holding that mandatory attendance at alcohol rehabilitation program amounted to custody). Ortega-Ramos has not alleged that he is required to present himself anywhere or
///

5
18cv2901-LAB (NLS)

at any time, or that he is imminently in danger of being detained. The burdens he does allege are not analogous to those in any case he cites.

Most helpful to Ortega-Ramos, custody can include banishment, loss of citizenship, and exclusion from the country. *See Jones*, 371 U.S. at 240 and n.10 (citing cases where aliens excluded from the United States were treated as "in custody"); *Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953) (granting habeas relief to legal permanent resident who, upon return to the U.S., was ordered excluded and deported without due process); *Trop v. Dulles*, 356 U.S. 86 (1958) (holding that denaturalization was properly challenged by means of habeas petition). *See also Subias v. Meese,* 835 F.2d 1288, 1289 (9th Cir. 1987) (reading *Jones*, 371 U.S. at 239, as holding that denial of entry amounts to a restraint on liberty sufficient to constitute custody for habeas purposes). The imminent threat of being taken into custody and excluded may also qualify as custody. *Williams v. INS*, 795 F.2d 738, 744–45 (9th Cir. 1986) (treating petitioner subject to a final order of deportation as "in custody" even though he was not physically detained). Ortega-Ramos' problem is that he was not banished, excluded, deported, removed, or denaturalized,[3] nor is he in imminent danger of any of these happening. He cites no case analogous to his where any petitioner was found to be in custody.

As a practical matter, losing his permanent residence card makes it more difficult for him to enter the United States, he cannot stay here permanently, and

---

[3] A non-citizen who has been removed is in a different position than a citizen, and is not likely to satisfy the custody requirements for habeas jurisdiction. *Miranda v. Reno*, 238 F.3d 1156, 1158–59 (9th Cir. 2001) ("Immigrants who have already been removed . . . do not satisfy the 'in custody' requirement of habeas corpus jurisdiction.") *But see id.* at 1159 (citing *Singh v. Waters*, 87 F.3d 346, 347 (9th Cir. 1996)) (recognizing that an exception may apply in "extreme circumstances," such as where the petitioner was removed in violation of a judge's order).

he cannot obtain benefits that would allow him to remain here for longer periods of time. But at the same time, it cannot be said Respondent is keeping him out of the country, nor are the restrictions on his entering the country are any greater than for the public at large. Unlike petitioners in cases he cites, he has not been removed, deported, or excluded. He left the country freely, and has never been ordered to stay out. Although he was denied entry to the country on one occasion, he is eligible to re-enter. If he were to try to reenter using a valid document, such as a tourist visa, he agrees he would be admitted. He has the same ability to enter the United States as most foreign nationals. *See Miranda*, 238 F.3d at 1159 (reasoning that a non-citizen who was removed from the country was "subject to no greater restraint than any other non-citizen living outside the American borders").[4]

Because Ortega-Ramos' Response and amended petition fall far short of establishing that he is "in custody" for habeas purposes, he has not met his burden of showing that the Court has jurisdiction to entertain his petition under 28 U.S.C. § 2241. The petition is **DISMISSED WITHOUT PREJUDICE**, but without leave to amend. This order does not prevent him from asserting his claims in some other way, or in a forum that can exercise jurisdiction over them.

**IT IS SO ORDERED**.

Dated: January 18, 2019

*Larry A. Burns*
Hon. Larry Alan Burns
United States District Judge

---

[4] *Miranda* dealt with a former legal permanent resident who was removed and . The petitioner there, unlike Ortega-Ramos, <u>was</u> barred from re-entering the U.S., because he had earlier been convicted of an aggravated felony. 238 F.3d at 1159. Still, he was held not to be "in custody" for habeas purposes. *Miranda* remains good law in this Circuit for these principles.

7
18cv2901-LAB (NLS)